UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TAMMY L. NOBILE,

                         Plaintiff,

- v -                                               Civ. No. 1:16-CV-0871
                                                               (DJS)
COMM'R OF SOC. SEC.,

                        Defendants.
_____

**APPEARANCES:**                                      **OF COUNSEL:**

LAW OFFICES OF STEVEN R. DOLSON      STEVEN R. DOLSON, ESQ.
Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.              HEETANO SHAMSOONDAR,
OFFICE OF REG'L GEN. COUNSEL – REGION II  ESQ.
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278


**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION and ORDER[1]

      Currently before the Court, is this Social Security action filed by Tammy L. Nobile ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g) seeking review of a denial of Disability Insurance Benefits and Supplemental Security Income. For the reasons set forth below, the decision of the Commissioner is **reversed** and this matter is **remanded** back to the Social Security Administration ("SSA") for

---

[1] On July 19, 2016, the parties consented, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, to have a magistrate judge exercise full jurisdiction over this matter. Dkt. No. 5.

further proceedings.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1966, making her 40 years old at her alleged onset date, 46 years old at the date last insured, and 48 years old at the date of the ALJ's decision. Plaintiff has a 12th grade education and past work as a cashier-checker. Generally, Plaintiff alleges disability consisting of nerve damage in her stomach caused by a surgical accident and seizures.

### B. Procedural History

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on June 25, 2013, alleging disability beginning July 1, 2007. Plaintiff's application was initially denied on November 27, 2013, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ Terence Farrell on March 8, 2015. On June 19, 2015, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 14-32.)[1] On June 15, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-3.)

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 12-21.) First, the ALJ found that Plaintiff was insured for disability benefits under Title II until December 31, 2012. (T. 16.) Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (*Id.*) Third, the ALJ found that Plaintiff's

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

seizure disorder, cervical degenerative disc disease, lumbar spondylosis with radiculopathy, right shoulder rotator cuff tendonitis and calcific bursitis, chronic abdominal pain status-post surgery, major depressive disorder, generalized anxiety disorder, and panic disorder are severe impairments. (T. 17.) Fourth, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 17-20.) More specifically, the ALJ considered Listing 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 11.00 (neurological disorders), 12.04 (mood disorders), and 12.06 (anxiety disorders). (*Id.*) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can lift, carry, push, and/or pull up to twenty pounds occasionally and ten pounds frequently, and can sit for up to six hours in an eight-hour workday with normal breaks. While she can stand and/or walk for a total of six hours in an eight-hour workday with normal breaks, she is limited to standing for approximately sixty minutes at a time, after which she must have the freedom to sit for a few minutes before resuming standing. Moreover, walking is limited to short distances of approximately one block at a time several times per day. The claimant can occasionally balance, crawl, crouch, stoop, kneel, and climb ramps and stairs, but can never climb ladders, ropes or scaffolds. She is further limited to only occasional reaching with her non-dominant upper extremity, and must avoid all exposure to workplace hazards such as unprotected heights and dangerous machinery. Additionally, she is limited to simple, unskilled work.

(T. 20.) Sixth, the ALJ found that Plaintiff remains able to perform her past relevant work as a cashier-checker as generally and as actually performed. (T. 31-32.)

### D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff asserts two interrelated arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in failing to provide an explanation of how Plaintiff's past relevant work was performed when determining she remained able to perform

that work.  (Dkt. No. 9, at 4-7 [Pl. Mem. of Law].)  Plaintiff argues that the ALJ erred in failing to develop the record as to how Plaintiff actually performed her past relevant work as a cashier-checker because the only statement regarding the demands of that work as provided by Plaintiff suggested she would likely not be able to perform that job with the RFC limitations.  (Dkt. No. 9, at 5-7 [Pl. Mem. of Law].)  Second, Plaintiff argues that an actual conflict existed between the RFC assessment, the vocational expert's testimony, and the Dictionary of Occupational Titles ("D.O.T.") and Selected Characteristics of Occupations ("S.C.O.").  (Dkt. No. 9, at 7-9 [Pl. Mem. of Law].)  Plaintiff more specifically argues that there was a conflict between the limitation to simple, unskilled work and the Specific Vocational Preparation ("SVP") number of three attached to the job of cashier-checker, as well between the limitation for occasional reaching with the non-dominant upper extremity and the D.O.T. and S.C.O. specifications as to the reaching requirements of Plaintiff's past work and the other jobs identified by the vocational expert.  (*Id.*)  Plaintiff asserts that the ALJ failed to inquire into and resolve these conflicts as required by SSR 00-4p.  (*Id.*)

Generally, Defendant asserts two responsive arguments in support of her motion for judgment on the pleadings.  First, Defendant argues that the ALJ's findings were consistent with applicable legal standards and supported by substantial evidence.  (Dkt. No. 13, at 5-9 [Def. Mem. of Law].)  More specifically, Defendant argues that the evidence in the record was sufficient for the ALJ to determine how Plaintiff performed her past relevant work as a cashier-checker, that it was Plaintiff's burden to show she was unable to perform her past relevant work, and that Plaintiff does not challenge that the ALJ relied on the classification of this job as generally performed in the national economy as described in the D.O.T. and S.C.O.  (Dkt. No. 13, at 5-6 [Def. Mem. of Law].)  Defendant also argues that Plaintiff would be able to perform her past relevant work despite the fact

it had an SVP of three because she had already performed it long enough in the past to learn it, and that the vocational expert testified that Plaintiff could perform other jobs in the national economy with the same RFC limitations, rendering any errors in determining her ability to perform her past relevant work harmless. (Dkt. No. 13, at 7-8 [Def. Mem. of Law].) Second, Defendant argues that the ALJ properly adhered to SSR 00-4p by asking the vocational expert if her testimony conflicted with the D.O.T., and asserts that the vocational expert's testimony is supported because she was aware of these restrictions when testifying that Plaintiff could perform both her past work and the alternatively provided Step Five jobs with the specified limitations. (Dkt. No. 13, at 8-9 [Def. Mem. of Law].)

## II.     RELEVANT LEGAL STANDARD

### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B. Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an

>impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III.   ANALYSIS

After carefully considering the interrelated questions of whether the ALJ properly determined that Plaintiff remained capable of performing her past relevant work as a cashier-checker and whether the ALJ properly complied with SSR 00-4p for assessing conflicts between the vocational expert's testimony and the D.O.T., the Court answers both these questions in the negative for the following reasons.

"At step four of the analysis, the ALJ must consider whether the plaintiff has the RFC to perform his or her past relevant work." *Grogg v. Comm'r of Soc. Sec.*, No. 5:11-CV-1381, 2014 WL 1312325, at *12 (N.D.N.Y. Mar. 31, 2014) (citing 20 C.F.R. § 404.1520(a)(4)(iv)). "In order to survive step four, 'the claimant has the burden to show an inability to return to her previous specific job *and* an inability to perform her past relevant work generally. This inquiry requires separate

evaluations of the previous job and the job as it is generally performed.'" *Grogg*, 2014 WL 1312325, at *12 (quoting *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003)). However, "[i]n determining whether a claimant can perform his or her past relevant work as generally performed, '[t]he inquiry . . . is not whether a claimant is able to perform the duties of her previous job, but whether the claimant is able to perform the duties associated with her previous 'type' of work.'" *Grogg*, 2014 WL 1312325, at *12 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)). Therefore, "[t]o meet her burden of proof at step four of the disability determination process, a claimant must demonstrate, not only that she is unable to return to her former work, but also that she is unable to return to her former *type* of work." *French v. Apfel*, 62 F. Supp. 2d 659, 663-64 (N.D.N.Y. July 14, 1999) (citing *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981)).

Plaintiff argues that remand is required because the ALJ failed to sufficiently develop the record regarding how Plaintiff specifically performed her work as a cashier-checker previously. (Dkt. No. 9, at 5-7 [Pl. Mem. of Law].) As both parties acknowledge, the record does contain a Work History Report completed by Plaintiff, in which she indicates that her work as a cashier-checker involved standing seven hours, kneeling, crouching, and handling large and small objects "when needed," lifting up to 20 pounds, and frequently lifting less than 10 pounds; Plaintiff indicated that although she was a "lead worker," she did not supervise others or make personnel decisions. (T. 283.) Plaintiff argues that because this form does not provide sufficiently detailed information to show how Plaintiff performed this job, the record was not developed sufficiently for the ALJ to make a determination regarding Plaintiff's current ability to perform this job. (Dkt. No. 9, at 5-7 [Pl. Mem. of Law].) However, Plaintiff's arguments miss the mark, as the ALJ also determined that Plaintiff could perform the job of cashier-checker as generally performed.

In making the determination that Plaintiff could perform her job as a cashier-checker as generally performed, the ALJ cited to the D.O.T. number corresponding to this job. (T. 31-32.) Since the D.O.T. and the companion S.C.O. contain specific information as to how jobs are generally performed in the national economy, the ALJ's citation to the D.O.T. number for cashier-checker indicates that she considered the demands of this job as it is generally performed when determining Plaintiff remained able to perform it at Step Four. *See French v. Apfel*, 62 F. Supp. 2d 659, 664 (N.D.N.Y. 1999) (finding remand warranted where the ALJ failed to make any findings regarding the physical and mental demands of plaintiff's past relevant work, noting that "[t]o the extent that the ALJ could have discharged this responsibility by referring to the D.O.T., he apparently did not do so here"); *see also Grogg*, 2014 WL 1312325, at *13 (citing *Jasinski*, 341 F.3d at 185). A supported finding that a claimant can perform past relevant work as generally performed is sufficient to allow for an unfavorable determination at Step Four even if the claimant is not able to perform that same work as she actually performed it in the past. *See Grogg,* 2014 WL 1312325, at *13 (noting that "[b]ecause the ALJ's finding that Plaintiff could perform this past relevant work as a parking lot attendant as generally performed is sufficient to negate a finding of disability at step four, it is not necessary for the Court to determine whether Plaintiff could perform her past relevant work as actually performed"); *French*, 62 F. Supp. 2d at 664 ("The ALJ may discharge his responsibilities with regard to the [issue of whether the RFC allows plaintiff to perform the physical and mental demands of her past work] by referring to the Dictionary of Occupational Titles [] for a definition of a particular job as it is ordinarily performed throughout the national economy."). Therefore, regardless of whether Plaintiff's work report was sufficient to allow the ALJ to determine Plaintiff's ability to perform this job as actually performed, the fact that she cited to the D.O.T. to support the

finding that Plaintiff could perform it as generally performed is sufficient to show that she considered the physical and mental demands of this job when making the Step Four determination. Consequently, there was no need to further develop the record regarding how Plaintiff actually performed this job.

However, the fact that the ALJ provided sufficient evidence to show she considered Plaintiff's past relevant work as generally performed does not end the inquiry. As the ALJ herself notes in the decision, Plaintiff's past work as a cashier-checker is defined in the D.O.T. as having an SVP of three, which indicates it is a semi-skilled position. (T. 32.) The fact that this job is a semi-skilled position raises a significant inconsistency in the ALJ's logic, as the ALJ indicated in the RFC assessment that Plaintiff was limited to "simple, *unskilled* work." (T. 20 (emphasis added).) The specification of a limitation to unskilled work would appear to preclude the ability to perform a job that is classified as semi-skilled. *See Lauber v. Colvin*, No. 6:14-CV-6146, 2015 WL 4600356, at *3 (W.D.N.Y. July 29, 2015) (noting that the ALJ determined plaintiff was unable to perform her semi-skilled and skilled past relevant work due to a limitation to unskilled work); *see also* SSR 82-41, 1982 WL 31389, at *2 (noting that "[s]emiskilled occupations are more complex than unskilled work and distinctly simpler than the more highly skilled types of jobs").

This Court is not persuaded by Defendant's argument that Plaintiff would be able to perform this past work now despite the RFC limitation because she had performed it in the past for years and for more than sufficient time to have already learned the position. (Dkt. No. 13, at 7-8 [Def. Mem. of Law].) Whether a claimant has performed her past work for sufficient time to learn it is an issue involved in determining whether that specific job meets the regulatory definition of past relevant work, not for determining whether a claimant remains able to perform that job despite her

limitations. *See Krull v. Colvin*, 669 F. App'x. 31, 31 (2d Cir. 2016) (noting that "[f]or a job to qualify as past relevant work, the claimant must have performed it long enough to have learned to do it") (citing 20 C.F.R. § 404.1560(b)(1)). The fact that Plaintiff had been able to perform this job for long enough to learn it in the past says nothing about her current ability to perform the skill-level demands of that same job when the effect of her impairments and limitations are considered. Defendant's argument in essence asks this Court to ignore the mental limitations in the RFC and overlook this glaring internal inconsistency in the ALJ's decision, but such a request runs contrary to the Agency's own regulations and policies. The ALJ did not provide any explanation to reconcile this inconsistency other than pointing to the vocational expert's testimony that Plaintiff could perform this job with the limitations included in the hypothetical. (T. 31-32.) There is therefore a question of whether the ALJ's Step Four finding is in fact supported by substantial evidence due to the lack of clear resolution related to this inconsistency.

However, even if the RFC assessment suggests that Plaintiff is unable to perform the mental demands of her past relevant work as a cashier-checker, such error would, by itself, likely be harmless because, as Defendant points out in her memorandum of law, the vocational expert's testimony shows that there would be other unskilled jobs in the national economy that Plaintiff would be capable of performing with the limitations included in RFC assessment and hypothetical questions the ALJ posed to the vocational expert. (T. 72-75; Dkt. No. 13, at 7-8 [Def. Mem. of Law].) However, this is not the only conflict that Plaintiff alleges impacted the ALJ's determination. Rather, Plaintiff alleges that there was a further conflict related to the issue of reaching that would impact Plaintiff's ability to perform not only her past relevant work, but also those alternative Step Five jobs identified by the vocational expert, an argument which necessitates further inspection.

The Agency's policy places the responsibility on the ALJ to ask a vocational expert whether and how her testimony conflicts with the D.O.T., and to obtain a reasonable explanation if an apparent conflict does exist. *See* SSR 00-4p, 2000 WL 1898704; *see also Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 446 (2d Cir. 2012) (noting that "a VE whose evidence conflicts with the DOT must provide a 'reasonable explanation' to the ALJ for the conflict"); *Brodbeck v. Astrue*, No. 5:05-CV-0257, 2008 WL 681905, at *9 (N.D.N.Y. Mar. 7, 2008) ("If a conflict exists between the evidence provided by the expert and the DOT, the ALJ must determine whether the expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT.").

Plaintiff argues that the ALJ's limitation for occasional reaching with the non-dominant upper extremity conflicted with the D.O.T. and S.C.O. because these sources indicate that a greater ability to reach is required to perform the relevant jobs and because they do not distinguish between bilateral and unilateral reaching. (Dkt. No. 9, at 8-9 [Pl. Mem. of Law].) Plaintiff further argues that the ALJ erred in failing to specifically question the vocational expert regarding how the reaching limitation impacted Plaintiff's ability to perform the identified jobs. (Dkt. No. 9, at 9 [Pl. Mem. of Law].)

The S.C.O. indicates that the jobs of photocopy machine operator, cafeteria attendant, and final assembler (which were identified by the vocational expert as jobs that Plaintiff could perform with the limitations in the RFC) all require frequent reaching. *See Selected Characteristics of Occupations* (Dept. of Labor, 1993) (D.O.T. Nos. 207.685-014; 311.677-010; 713.687-018). Therefore, as Plaintiff argues, there appears to be an apparent conflict between the D.O.T. definitions of these alternative jobs and the hypothetical question presented to the vocational expert.

At the hearing, prior to taking the vocational expert's testimony, the ALJ asked, "when you're asked to give an expert opinion, if your opinion departs in any way from information provided in the most recent edition of the Dictionary of Occupational Titles or the Selected Characteristics of Occupations, would you please identify the discrepancy?" to which the vocational expert responded, "Yes." (T. 70.) However, at no point during or after the vocational expert's actual testimony was given did the ALJ re-question the vocational expert regarding the consistency of her testimony with the D.O.T. or S.C.O., nor did the vocational expert identify or explain any discrepancies as she had indicated she would do. (T. 70-81.)

Both Plaintiff and Defendant, in making their arguments on this issue, rely on out-of-district (and even out-of-circuit) cases to support their positions. However, there are more illustrative and relevant examples to guide this Court's analysis. For example, this Court recently remanded where the ALJ asked the vocational expert a "catch-all" question (i.e., whether there was "any conflict between her testimony and the occupational information contained in the D.O.T."), finding that this "catch-all" question, by itself, was "insufficient to satisfy the ALJ's affirmative duty to resolve any conflicts pursuant to SSR 00-4p." *Robles v. Comm'r of Soc. Sec.*, No. 5:15-CV-1359, 2016 WL 7048709, at \*6 (N.D.N.Y. Dec. 5, 2016) (internal citations omitted). In another recent case, this Court found that the ALJ properly reconciled inconsistencies between the vocational expert's testimony and the D.O.T. where he not only asked whether the vocational expert's testimony was consistent with the D.O.T., but the vocational expert explicitly indicated that his testimony regarding limitations in the use of one limb rather than both bilateral limbs was based on "his own professional experience." *Abar v. Colvin*, No. 7:15-CV-0095, 2016 WL 1298135, at \*11 (N.D.N.Y. Mar. 31, 2016).

The situation in this case is more akin to *Roble* than *Abar* in that the ALJ did little more than ask a "catch-all" question without seeming to truly inquire into whether the vocational expert's testimony was consistent with the RFC. While the issue of unilateral reaching might not have been a wholly apparent inconsistency at the time the ALJ was questioning the vocational expert, the inconsistency between the hypothetical question for unskilled work and the vocational expert's testimony that Plaintiff could perform her semi-skilled past relevant work should have been glaringly apparent, and yet even that did not prompt the ALJ to conduct any further investigation. Defendant argues that because the vocational expert was aware that the hypothetical question contained a limitation for occasional reaching with one arm, the vocational expert's testimony that Plaintiff could still perform these jobs indicated that there was no real conflict with how these jobs are performed. (Dkt. No. 13, at 8-9 [Def. Mem. of Law].) While it may be the case that these jobs can be performed with occasional reaching with the non-dominant hand, there was still no clear explanation as to what evidence the vocational expert based that opinion on; unlike in *Abar*, the vocational expert in this case did not indicate that it was based on her professional experience or anything of that nature. *Abar*, 2016 WL 1298135, at *11. This leaves it unclear what evidence the vocational expert relied on, something which prevents this Court from determining whether that testimony is supported by substantial evidence. *Booker v. Astrue*, No. 1:07-CV-0646, 2011 WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)); *Gallow v. Comm'r of Soc. Sec.*, No. 5:15-CV-1017, 2016 WL 5854281, at *6 (N.D.N.Y. Sept. 13, 2016) (finding remand appropriate where "[t]his Court cannot determine whether substantial evidence supported the ALJ's RFC determination, because there is a 'reasonable basis for doubt' as

to whether correct legal principles were applied; therefore, the substantial evidence standard may not be used to uphold the ALJ's decision") (citing *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 280 (N.D.N.Y. 2009)).

The ALJ has the explicit responsibility at Step Five of the sequential evaluation to elicit a reasonable explanation for conflicts prior to relying on vocational expert testimony, and yet the ALJ did not make anything more than a formulaic attempt to comply with that responsibility in this case despite multiple apparent conflicts related to both Plaintiff's past relevant work and the other alternative jobs identified by the vocational expert. SSR 00-4p, 2000 WL 1898704. Because these conflicts do raise serious questions that are unresolvable based on the current record as to whether the vocational expert's testimony constitutes substantial evidence to support the ALJ's conclusions, remand for further exploration and explanation related to these issues is warranted, particularly as these conflicts appear to invalidate the Step Four finding, and the burden then shifts to the ALJ at Step Five. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (noting that, although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'") (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).

For the above reasons, the ALJ's Step Four finding is not supported by substantial evidence, an error which cannot be considered harmless due to the fact that the ALJ did not properly comply with the requirements of SSR 00-4p in relation to the vocational expert's testimony regarding other jobs in the national economy. Therefore, remand is merited on this issue.

**ACCORDINGLY**, it is

**ORDERED**, that the Commissioner's decision is **REVERSED** and that this matter is **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

Date:  July 19, 2017
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge